# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-1166V
UNPUBLISHED

| | |
|---|---|
| PATRICIA HORTON, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 25, 2022 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Zoe Wade, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On September 9, 2020, Patricia Horton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA"), which meets the Table definition for SIRVA, after receiving the influenza vaccine on November 9, 2018. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit of the Office of Special Masters. Although a ruling on entitlement in Petitioner's favor was issued in September 2021, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$60,372.40**, **representing compensation in the amounts of $60,000.00 for actual pain and suffering and $372.40 for past unreimbursed expenses.**

## I.      Relevant Procedural History

Along with the Petition, Ms. Horton filed the medical records and affidavit required under the Vaccine Act. Exhibits 1-10, filed Sept. 9, 2020, ECF No. 1; *see* Section 11(c). On March 4, 2021, Respondent indicated that he had identified no outstanding medical records or factual issues which could be addressed while awaiting the HHS review. ECF No. 12. Petitioner forwarded her demand and supporting documentation to Respondent on June 15, 2021. ECF No. 14.

On September 15, 2021, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement the same day. ECF Nos. 15-16. For approximately four months thereafter, the parties attempted to informally resolve the issue of damages. *See, e.g.*, Status Report, filed Nov. 21, 2021, ECF No. 20. On December 21, 2021, they informed me that Petitioner had rejected Respondent's proffer. ECF No. 21.

During the subsequent three-month period, Petitioner filed declarations from her family, work supervisor, friends and herself. Exhibits 11-16, ECF Nos. 22-24, 26-28.[3] On February 22-23, 2022, the parties filed their briefs regarding the appropriate amount of damages, and Petitioner provided a list of her unreimbursed medical expenses. ECF Nos. 29-30; Exhibit 17, ECF No. 31. Neither party filed a responsive brief by the March 17, 2022 deadline. The matter is now ripe for adjudication.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined

---

[3] All declarations indicated the signatories understood the statement would be filed into the record of Petitioner's vaccine claim. Exhibits 11-16. However, they were not signed under penalty of perjury as required by 28 U.S.C.A. § 1746. *Id.*

to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at \*22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at \*9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at \*3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at \*9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at \*3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g., Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.   Prior SIRVA Compensation Within SPU[5]

#### A.   Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2022, 2,371 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,306 of these cases, with the remaining 65 cases dismissed.

Of the compensated cases, 1,339 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 88 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[6]

1,223 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.,* No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

The remaining 967 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[7] Agreement |
|---|---|---|---|---|
| **Total Cases** | *88* | *1,223* | *28* | *967* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,950.73 | $70,000.00 | $90,000.00 | $42,500.00 |
| **Median** | **$95,974.09** | **$90,000.00** | **$122,886.42** | **$60,390.00** |
| **3rd Quartile** | $125,269.46 | $116,662.57 | $161,001.79 | $88,051.88 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

## B. Pain and Suffering Awards in Reasoned Decisions

In the 88 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $94,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered

---

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including all medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances of this case.

### A.   The Parties' Arguments

The parties agree Petitioner should be awarded $372.40 for past unreimbursed medical expenses. Petitioner's Brief in Support of a Damages Decision ("Brief") at 1, 10, ECF No. 30; Respondent's Brief on Damages ("Opp.") at 1, 7, ECF No. 29. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $90,000.00 for her pain and suffering, and Respondent argues for an award of $52,500.00. *Id.*

The parties further agree that Petitioner's SIRVA lasted approximately eight months and required treatment consisting of medication, a single steroid injection, and eight physical therapy PT sessions. Brief at 8; Opp. at 1. However, in briefing, Petitioner characterized her injury as severe (Brief at 8), while Respondent described it as "a relatively minor SIRVA injury" (Opp. at 3).

When arguing for the greater award she seeks, Petitioner emphasized that her shoulder pain prompted her to seek treatment within twelve days[9] of vaccination, caused her orthopedist to propose surgery as a potential treatment option, and interfered with her abilities to play tennis and basketball and to fulfill her duties as a tennis assistant.[10] Brief at 8-9. The declarations Petitioner provided, from herself and others, detailed limitations and difficulties she experienced from vaccination through the spring of 2019.[11] All declarants represented that Petitioner continues to experience some milder symptoms of her injury.[12]

Petitioner compared the facts and circumstances in her case favorably with the experiences of the petitioner in *Marino,* who received $75,000.00 for her past pain and suffering.[13] Brief at 5-7. Specifically, she asserted that her difficulties playing tennis and working equate to those suffered by the *Marino* petitioner, but maintained that her award should be greater due to the delayed and lower amount of treatment pursued by the *Marino* petitioner. *Id.* at 7; *see Marino,* 2018 WL 2224736, at *7-9.

Respondent, by contrast, accentuated the improvement in pain levels and limited ROM Petitioner exhibited by her last PT session in late April 2019, her ability to work throughout her injury and to resume her full duties thereafter, and the uncertainty expressed in some medical records regarding the etiology of her complete rotator cuff tear. Opp. at 4-5, 5 n.2. As a comparison, he proposed that the facts and circumstances

---

[9] Although Petitioner describes the time between vaccination and the initial treatment of her SIRVA injury as twelve days, the medical records reveal it was fourteen days. Exhibit 2 at 62-78.

[10] There is evidence in the medical records that Petitioner may also work as a dental hygienist. *E.g.,* Exhibit 3 at 17. Whether this information is accurate is unclear.

[11] Exhibit 11 at ¶ 2 (statement from Petitioner's daughter); Exhibit 12 at ¶ 2 (statement from Petitioner's work supervisor); Exhibit 13 at ¶¶ 1-7 (statement from a male family member or possibly Petitioner's ex-husband); Exhibit 14 at ¶¶ 4, 9-10, 12 (statement from Petitioner); Exhibit 15 at ¶¶ 3-4 (statement from Petitioner's friend); Exhibit 16 at ¶¶ 4-6 (statement from Petitioner's friend).

[12] Exhibit 11 at ¶ 3; Exhibit 12 at ¶ 3; Exhibit 13 at ¶ 8; Exhibit 14 at ¶¶ 5-6, 11; Exhibit 15 at ¶ 5; Exhibit 16 at ¶ 8.

[13] *Marino v. Sec'y of Health & Hum. Servs.,* No.16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for actual pain and suffering).

experienced by the *Dagen* petitioner, who received the lesser sum of $65,000.00 for her pain and suffering, provide a better comparison.[14] Opp. at 5-7. However, he maintained that Petitioner's award should be even less than that awarded to the *Dagen* petitioner. *Id.* at 7. To support this assertion, Respondent cited the greater severity of the *Dagen* petitioner's pain and limited ROM, the initial worsening then slow improvement of her condition - including the fleeting relief the *Dagen* petitioner obtained from the cortisone injection she received, the greater certainty involving the causal link between the *Dagen* petitioner's vaccination and SIRVA injury, and the *Dagen* petitioner's younger age and more difficult circumstances - raising a school age child. *Id.* at 6-7; *see Dagen*, 2019 WL 7187335, at *9.

**B.    Analysis**

A thorough review of the medical records reveals that Ms. Horton, who was 60 years old at the time of vaccination, suffered a moderate SIRVA injury which improved during eight PT sessions over a four-month period and resolved after a cortisone injection approximately eight months post-vaccination. At her initial PT session on January 9, 2019, Petitioner described pain which varied from three to eight on a scale of ten and exhibited moderate limitations in her ROM. Exhibit 4 at 1. By her fourth PT session on February 1, 2019, Petitioner reported improved motion and pain which "[wa]sn't as bad." *Id.* at 9. Approximately three weeks later, she indicated that her motion had appeared to plateau, but she was "[s]o much better than she was a month ago." *Id.* at 13. At her last two PT sessions on March 25 and April 22, 2019, Petitioner complained primarily of pain. *Id.* at 15, 17. On April 22, she reported that her "[m]otion [is] really doing pretty well but [it] still hurts when she gets up in the morning." *Id.* at 17. She was discharged from PT on May 20, 2019. *Id.* at 22.

When discussing the results of a recent MRI during an orthopedic appointment on June 14, 2019 (Exhibit 3 at 11), Petitioner initially declined a cortisone injection, but consented to and was administered a cortisone injection when she returned to the orthopedist on July 22, 2019 (*id.* at 8). It appears that the injection successfully alleviated Petitioner's pain as she did not seek further treatment.

Respondent argues that Petitioner's pain and suffering award should be less than requested because the etiology of her complete rotator cuff tear was unclear. However, there is no evidence to suggest that the tear was symptomatic *prior* to Petitioner's receipt of the flu vaccine. As I have previously discussed, many SIRVA injuries involve patients with "prior conditions such as rotator cuff tears which became symptomatic following improper vaccine injection." *Lesher v. Sec'y of Health & Hum. Servs.*, No. 17-1076V, 2020

---

[14] *Dagen v. Sec'y Health & Hum. Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering).

WL 4522381, at *12 (Fed. Cl. Spec. Mstr. July 2, 2020) (citing S. Atanasoff et al., *Shoulder injury related to vaccine administration (SIRVA)*, 28 Vaccine 8049 (2010)). Thus, I do not find the uncertainty regarding the exact cause of the rotator cuff tear to be relevant when computing the amount to be awarded for pain and suffering clearly attributable to Petitioner's SIRVA injury. As discussed below, it is relevant when determining if the current pain Petitioner maintains she is suffering is related to her injury.

I otherwise find Respondent's characterization of Petitioner's injury to be accurate. And the case he provides – *Dagen* – offers a compelling and helpful comparison when determining the appropriate pain and suffering award. Like the Petitioner in this case, the *Dagen* petitioner suffered a SIRVA injury which prompted her to seek treatment within two weeks of vaccination and which resolved within seven months after a cortisone injection and two rounds of PT - totaling 16 individual sessions and spanning 1.5 months for each round. However, the *Dagen* petitioner suffered worsening pain after one month of PT, experienced only four days of pain relief following her cortisone injection, and reported only 80 percent improvement at seven months post-vaccination. *Dagen,* 2019 WL 7187335, at *9. Thus, Petitioner's pain and suffering award should be slightly lower than that granted the *Dagen* petitioner.

I do not find the case proposed by Petitioner to be a helpful comparison. Although arguably less severe than the SIRVA Petitioner suffered, the *Marino* petitioner's SIRVA lasted approximately 29 months – between three to four times longer than Petitioner's SIRVA. In her brief, Petitioner fails to address this substantial difference, and I find the difference in duration renders the comparison ineffective.

Petitioner otherwise argues that she continues to suffer mild pain and weakness in her left shoulder, and has provided statements from family members and friends supporting her assertion. *See supra* note 12. However, she acknowledges in her brief that the duration of her SIRVA injury was approximately eight months. Brief at 8. And she has failed to provide medical records or other persuasive evidence linking these current symptoms to her earlier SIRVA injury. The declarations, for example, lack vital information regarding the timing of the later symptoms described. In fact, the witness statements tend to reinforce the conclusion that Petitioner's symptoms had greatly improved throughout the spring and summer of 2019. *See, e.g.*, Exhibit 15 at 4 (indicating Petitioner joined a gym with her friend in spring 2019); Exhibit 16 at 7 (describing Petitioner's ability to play basketball and stating that "[i]t wasn't until June of 2019 that Patti was able to perform at her usually level of play"). Furthermore, the complete rotator cuff tear previously viewed on Petitioner's MRI - which never repaired, and was characterized as having an unknown etiology by her orthopedist - provides a credible explanation for any current pain that was not persuasively distinguished by Petitioner.

After reviewing other comparable cases, I find the facts and circumstances of Petitioner's case best align with those suffered by the petitioners in *Berberich* and *Saha,* who received pain and suffering awards of $60,000.00.[15] These petitioners suffered moderate SIRVAs which improved after two to three months and then resolved within seven to eleven months – after less PT than Petitioner experienced, but featuring more cortisone injections. *Berberich*, 2021 WL 4823551, at *7-8; *Saha,* 2021 WL 3028060, at *1. I thus find that Petitioner should receive the same pain and suffering award of $60,000.00.

### V.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $60,00.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[16] I also find that Petitioner is entitled to $372.40 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $60,372.40 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[17]

**IT IS SO ORDERED.**

                                                      **s/Brian H. Corcoran**
                                                      Brian H. Corcoran
                                                      Chief Special Master

---

[15] *Berberich v. Sec'y Health & Hum. Servs.*, No. 20-0010V, 2021 WL 4823551 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $60,000.00 for actual pain and suffering); *Saha v. Sec'y Health & Hum. Servs.*, No. 20-0178V, 2021 WL 3028060 (Fed. Cl. Spec. Mstr. June 17, 2021) (awarding $60,000.00 for actual pain and suffering).

[16] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.